UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

| | |
|---|---|
| NETWORK APPS, LLC, A WASHINGTON LIMITED LIABILITY CORPORATION<br><br>Plaintiff,<br><br>vs.<br><br>AT&T INC., A DELAWARE CORPORATION;<br>AT&T CORP., A NEW YORK CORPORATION;<br>AT&T MOBILITY, LLC, A DELAWARE LIMITED LIABILITY COMPANY<br>AND<br>AT&T SERVICES, INC., A DELAWARE CORPORATION.<br><br>Defendants | Case No.: 2:16-CV-01852<br><br>**REDACTED COMPLAINT FOR BREACH OF CONTRACT, INFRINGEMENT OF COPYRIGHTS, MISAPPROPRIATION OF TRADE SECRETS, AND INFRINGEMENT OF PATENT** |

REDACTED COMPLAINT FOR BREACH OF CONTRACT, INFRINGEMENT OF COPYRIGHTS, MISAPPROPRIATION OF TRADE SECRETS, AND INFRINGEMENT OF PATENT - 1

CLOUTIER GLOBAL
1601 5TH AVE., STE 1100
SEATTLE, WA 98101
206.319.9001

Plaintiff NETWORK APPS, LLC ("Network Apps") hereby files this Complaint against Defendants AT&T INC., AT&T CORP., AT&T MOBILITY, LLC and AT&T SERVICES, INC. (all collectively referred to as "Defendants" or "AT&T") and alleges as follows:

## I.  PARTIES

1. Network Apps is a Washington limited liability company with its principal place of business in Seattle, Washington.

2. Network Apps now owns all the assets, including the patent, copyrights, trade secrets (collectively "Intellectual Property"), contracts, and claims (collectively "Assets") of Mya Number, Inc., an inactive, Washington corporation ("Mya Number"). On December 2, 2016, the '728 Patent was assigned to Network Apps. Network Apps owns all right, title, and interest in the '728 Patent, and holds the right to sue and recover damages for infringement thereof, including past infringement. The managing members of Network Apps are Kyle Schei and John Wantz (collectively the "Inventors").

3. Kyle Schei was a co-founder and Chief Executive Officer of Mya Number. Mr. Schei is also the co-inventor of the Intellectual Property developed at Mya Number, which was recently acquired by Network Apps. Mr. Schei is a serial entrepreneur based in the Seattle area.

4. John Wantz was a co-founder and Chief Technology Officer of Mya Number. Mr. Wantz is also the co-inventor of the Intellectual Property developed at Mya Number, which was recently acquired by Network Apps. Mr. Wantz is a serial entrepreneur based in the Seattle area.

5. Mr. Wantz and Mr. Schei are Seattle natives and college friends who have successfully worked together creating and managing local technology companies. Together, and separately, each of the two entrepreneurs have successfully developed and taken technology to market.

COMPLAINT FOR BREACH OF CONTRACT, INFRINGEMENT OF COPYRIGHTS, MISAPPROPRIATION OF TRADE SECRETS, AND INFRINGEMENT OF PATENT - 2

6. Upon information and belief, Defendant AT&T Inc. is a Delaware corporation with a principal place of business at 208 S. Akard Street, Dallas, Texas 75202.

7. Upon information and belief, Defendant AT&T Corp. is a New York corporation having its principal place of business at One AT&T Way, Bedminster, New Jersey 07921. AT&T Corp. does business under at least the following names: AT&T Mobility, LLC and AT&T Services, Inc. Upon information and belief, AT&T Corp. is a wholly owned subsidiary of AT&T Inc.

8. Upon information and belief, Defendant AT&T Mobility, LLC is a Delaware limited liability company having its principal place of business at 5565 Glenridge Connector, Atlanta, Georgia 30342. Upon information and belief, AT&T Mobility, LLC is a wholly owned subsidiary of AT&T Inc.

9. Upon information and belief, Defendant AT&T Services, Inc. ("AT&T Services") is a Delaware corporation with a principal place of business at 175 E. Houston, San Antonio, Texas 78205. AT&T Services was formerly known as SBC Services, Inc., and is a wholly owned subsidiary of AT&T Inc.

COMPLAINT FOR BREACH OF CONTRACT, INFRINGEMENT OF COPYRIGHTS, MISAPPROPRIATION OF TRADE SECRETS, AND INFRINGEMENT OF PATENT - 3

CLOUTIER GLOBAL
1601 5TH AVE., STE 1100
SEATTLE, WA 98101
206.319.9001

## II. JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction under 28 U.S.C. § 1331, § 1332 and 1338(a) because this action arises under the patent laws of the United States, including 35 U.S.C. § 271 *et seq.*

11. Upon information and belief, AT&T Inc. directs and/or controls AT&T's subsidiaries such that AT&T's subsidiaries constitute alter egos and/or agents of AT&T Inc. Upon information and belief, AT&T Inc. wholly owns each of AT&T's subsidiaries, each of AT&T's subsidiaries is financially dependent on AT&T Inc., AT&T Inc. shares common officers and/or directors with each of AT&T's subsidiaries, and/or AT&T Inc. exercises control over the marketing and operational policies of each of AT&T's subsidiaries. AT&T Inc. participates with its subsidiaries in the sale, advertising, and marketing of technology within the State of Washington and this district, which infringe on the intellectual property pertinent to this action.

12. This Court has personal jurisdiction over Defendants because Defendants have committed acts of infringement in violation of 35 U.S.C. § 271 by selling and using infringing products and systems and by performing infringing methods that incorporate the intellectual property of Network Apps in the stream of commerce in the forum state. These acts have caused and continue to cause injury to Network Apps. Defendants derive substantial revenue from the sale of infringing products and services within Washington and this district and/or expect or should reasonably expect their actions to have consequences within the State of Washington and this district. Defendants have availed themselves of the laws and protections of the State of Washington. In addition, Defendants knowingly induce infringement within the State of Washington and this district by contracting with others to market and sell infringing products and services with the knowledge and intent to facilitate infringing sales and use of the products and services by others within Washington and this district.

COMPLAINT FOR BREACH OF CONTRACT, INFRINGEMENT OF COPYRIGHTS, MISAPPROPRIATION OF TRADE SECRETS, AND INFRINGEMENT OF PATENT - 4

CLOUTIER GLOBAL
1601 5TH AVE., STE 1100
SEATTLE, WA 98101
206.319.9001

13. Additionally, the Court has personal jurisdiction over AT&T Corp., AT&T, Inc., AT&T Mobility, LLC and AT&T Services, Inc, because these parties have sufficient minimum contacts with the forum state and maintain a registered agent and an ongoing business within the State of Washington.

14. Venue is proper and convenient under 28 U.S.C. §§ 1391(b)(2) and 1400(b) because a substantial part of the events giving rise to the claim occurred in this judicial district, and the intellectual property that is the subject of this action was created, designed, and sold in this judicial district. In addition, Defendants sold or offered for sale products which incorporated infringing intellectual property in this judicial district.

15. Joinder of Defendants in this case is proper under 35 U.S.C. § 299 because Defendants act jointly and collectively to offer for sale, sell, use, and induce the use of infringing AT&T-branded products and services. At least some of Plaintiff's right to relief is joint, several and/or in the alternative against Defendants and is with respect to or arises from the same transaction, occurrence, or series of transactions or occurrences relating to the same accused products and processes, namely the sale or use of the intellectual property owned by Network Apps. Defendants share an aggregate of operative facts, and common questions of fact will arise in this action, including the design and creation of the accused intellectual property; Defendants' collective actions in offering for sale, selling and using the accused processes; and Defendants' collective actions to induce customers to use the intellectual property in question.

COMPLAINT FOR BREACH OF CONTRACT, INFRINGEMENT OF COPYRIGHTS, MISAPPROPRIATION OF TRADE SECRETS, AND INFRINGEMENT OF PATENT - 5

CLOUTIER GLOBAL
1601 5TH AVE., STE 1100
SEATTLE, WA 98101
206.319.9001

## III. FACTUAL ALLEGATIONS

16. Paragraphs 1-15 are reincorporated by reference as if fully set forth herein.

### BACKGROUND

17. Mr. Schei and Mr. Wantz founded Mya Number with the idea of keeping children and parents connected. myaNumber-for-Families™, a Mya Number cornerstone product, is a phone calling management system that was developed to give children one phone number to call a trusted adult in their life. myaNumber-for-Families™ connects a distinct group of phone numbers with a single phone number. When the single number was called, all grouped phone numbers would receive the call. The grouped numbers could ring all at once or consecutively, in a predefined order. After the calls were placed, an email and text message report would be sent to each of the grouped phone numbers.

18. myaNumber-autoMode™ was another Mya Number cornerstone product developed by Mr. Schei and Mr. Wantz to keep new drivers safe. myaNumber-autoMode™ allows at least two existing phone numbers to communicate. Generally, one phone number would communicate with at least a second phone number using the Mya Number network platform. If a new driver's, usually a child, mobile phone was traveling at or above a certain speed, the text message and voice call function on the child's mobile phone would be suspended until speed was reduced, and a text and/or email notification would be sent to the parent's phone number.

COMPLAINT FOR BREACH OF CONTRACT, INFRINGEMENT OF COPYRIGHTS, MISAPPROPRIATION OF TRADE SECRETS, AND INFRINGEMENT OF PATENT - 6

CLOUTIER GLOBAL
1601 5TH AVE., STE 1100
SEATTLE, WA 98101
206.319.9001

19. During the time that Mr. Schei and Wantz were developing Mya Number products and growing the company, AT&T made available application program interfaces (APIs) that allowed developers to integrate AT&T network specific functionality into the developer's 3rd party applications. Developers could then provide enhanced features within their applications to AT&T subscribers. AT&T asked Mya Number to be a showcase developer. To that end, on November 28, 2012, AT&T and Mya Number entered a Limited Application Programming Interface Usage Agreement (the "Interface Agreement"), attached hereto as Exhibit A, to showcase how myaNumber-for-Families™ could utilize AT&T APIs for AT&T subscribers. Mya Number and AT&T agreed that the Interface Agreement would not ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Exhibit A., paragraph 1(c) (*emphasis added*).

20. AT&T's Chief Marketing Officer, David Christopher showcased myaNumber-for-Families™ as a 3rd party solution to enhance the AT&T customer experience with AT&T API integration at AT&T's annual Developer Summit, in Las Vegas, in January 2013. (*See* https://www.technologyreview.com/s/509821/in-a-bid-to-keep-voice-alive-att-courts-developers/; *see also* https://www.tropo.com/2013/01/developer-story-myanumber-for-simple-secure-family-communications-using-tropo-and-phono/)

### MYA NUMBER DEVELOPS NUMBERSYNC

21. In late 2013, Ed Schmit, Executive Director of AT&T Mobility, LLC, contacted Mya Number about creating a solution that would allow a standalone smart watch to become a companion device for a mobile phone. Through a vetting process, AT&T selected Mya Number to develop a solution that would be available to AT&T consumers. The project was interchangeably known as "NDA 34," "twinning solution," and "NumberSync."

COMPLAINT FOR BREACH OF CONTRACT, INFRINGEMENT OF COPYRIGHTS, MISAPPROPRIATION OF TRADE SECRETS, AND INFRINGEMENT OF PATENT - 7

CLOUTIER GLOBAL
1601 5TH AVE., STE 1100
SEATTLE, WA 98101
206.319.9001

22. The agreements between Mya Number and AT&T reflect that NumberSync and any related intellectual property, *i.e.* patents, copyrights, trade secrets, is owned by Mya Number and is evidenced by the license fee that was to be paid to Mya Number under the Initial SOW Order which was provided by Ed Schmit. *See* Initial Statement of Work (the "Agreement"), Exhibit 7, Initial SOW Order.[1]

23. During this time, AT&T was working with Mya Number to source original equipment manufacturers (OEMs) that would be able to deliver hardware that could deploy NumberSync. In early November, AT&T and Mya Number interviewed and entered non-disclosure agreements (NDAs) with the first of several hardware OEMs.

24. Mya Number developed its twinning solution based on the concepts of grouped call forwarding, masking, and the user interface component it developed for myaNumber-for-Families™ and myaNumber-autoMode™. Mya Number's twinning solution grouped multiple devices so that one existing mobile number could be used with multiple devices; allowed one existing mobile number to be recognized by a receiving party no matter which mobile device was being used; and allowed a user to make or receive calls or texts from any one of a group of mobile devices using one existing mobile number. ("NumberSync Grouping, Call Delivery, and Messaging Services Platform") *See* Exhibit B, Mya Number, AT&T Mobile One Number (my#), Wearable Deployment, Powered by myaNumber, Slide Deck. Mya Number's product was to be branded as NumberSync powered by Mya Number. Agreement, page 43, paragraph 4.

25. In addition to developing the NumberSync Grouping, Call Delivery, and Messaging Services Platform, Mya Number developed software development kits/android application packages (SDK/APKs) for OEM hardware integration, messaging services,

---

[1] The Initial SOW Order is not attached as it is subject to the nondisclosure provisions of NDA 34.

COMPLAINT FOR BREACH OF CONTRACT, INFRINGEMENT OF COPYRIGHTS, MISAPPROPRIATION OF TRADE SECRETS, AND INFRINGEMENT OF PATENT - 8

CLOUTIER GLOBAL
1601 5TH AVE., STE 1100
SEATTLE, WA 98101
206.319.9001

other executable and non-executable code, and an end-user interface to connect the NumberSync Grouping, Call Delivery, and Messaging Services Platform to the AT&T network and the OEM hardware.

26. After Mya Number, AT&T and the first OEM executed non-disclosure agreement 34 (NDA 34), Mr. Schei and Mr. Wantz worked closely with Ed Schmit, John Powell, AT&T Lead Channel Marketing Manager, Carolyn Billings, Associate Vice President, AT&T Developer Program, Carlton Hill, AT&T Vice President Device Operations and Developer Services, and the OEM leadship to deliver NumberSync deployment onto the OEM Hardware and through the AT&T network.

27. On or about January 8, 2014, Mya Number successfully demonstrated its NumberSync Grouping, Call Delivery, and Messaging Services Platform to Jeff Bradley, Senior Vice President of AT&T Wireless, Ralph De La Vega, Vice-Chairman of AT&T Inc., David Christopher, Chief Marketing Officer of AT&T Mobility, and the OEM hardware leadership by executing inbound and outbound calls and text messages to and from grouped devices using an existing phone number. Exhibit C, Use Case prepared by AT&T Marketing.

28. After the successful demonstration, AT&T increased the scope of deployment several fold and sought to expedite deployment. Mya Number consistently met development and integration goals defined under the Initial SOW Order even with the increase in scope and expedited deployment schedule.

29. The OEM hardware development team that AT&T selected to deploy Mya Number's NumberSync Grouping, Call Delivery, and Messaging Services Platform had difficulty meeting its development timelines causing the testing and release of NumberSync integrated products to be delayed and causing cost overruns.

30. On or about May 15, 2013, Mya Number stopped work on NumberSync pending the ongoing negotiations concerning the terms for expanded deployment with AT&T.

COMPLAINT FOR BREACH OF CONTRACT, INFRINGEMENT OF COPYRIGHTS, MISAPPROPRIATION OF TRADE SECRETS, AND INFRINGEMENT OF PATENT - 9

CLOUTIER GLOBAL
1601 5TH AVE., STE 1100
SEATTLE, WA 98101
206.319.9001

31. On or about June 27, 2013, AT&T formalized and executed the Agreement, discussed in paragraph 21, outlined end-user license agreement terms, and reiterated intellectual property ownership. The Agreement is identified as document number 20140530.016.S.001.[2]

32. On September 6, 2016, United States Patent Number 9,438,728, entitled Telephone Number Grouping Service for Telephone Service Providers, ("the '728 Patent") was issued by the United States Patent and Trademark Office ("PTO"). The '728 Patent is attached hereto as Exhibit D.

33. Mya Number also owns intellectual property, not claimed in the '728 Patent, in copyrights and trade secrets that include, but are not limited to SDK/APKs for OEM hardware integration, messaging services, other executable and non-executable code, and an end-user interface to connect the NumberSync Grouping, Call Delivery, and Messaging Services Platform to the AT&T network and the OEM hardware.

34. Upon information and belief, AT&T integrated Mya Number's NumberSync Grouping, Call Delivery, and Messaging Services Platform and other Intellectual Property into the AT&T network.

35. Upon information and belief, in late 2015 AT&T deployed NumberSync using Mya Number's intellectual property that is protected by the '728 Patent, trade secrets and copyrights. Exhibit E, Phil Goldstein, Fierce Wireless Article on NumberSync. When the Initial SOW Order and Agreement were executed, AT&T anticipated that a subscriber would pay to "twin" each companion device. *See* Exhibit C. AT&T now offers

---

[2] The Initial Statement of Work (document number 20140530.016.S.001) and its Exhibits are not attached as they subject to the nondisclosure provisions of NDA 34.

COMPLAINT FOR BREACH OF CONTRACT, INFRINGEMENT OF COPYRIGHTS, MISAPPROPRIATION OF TRADE SECRETS, AND INFRINGEMENT OF PATENT - 10

CLOUTIER GLOBAL
1601 5TH AVE., STE 1100
SEATTLE, WA 98101
206.319.9001

NumberSync, *i.e.* "twinning", as a standard value-add for all subscribers in the AT&T network.

36. Upon information and belief, beginning in or about October 2015, AT&T has offered and continues to offer to its entire subscriber base products that are protected by the '728 Patent, trade secrets, and/or copyrights. Because of an exclusivity provision in the Agreement, AT&T knew that Mya Number was excluded from selling its solution to any third-party, such as other carriers, through early 2016. Agreement, paragraph 2.3 <u>Exclusivity Periods.</u>

## IV. CLAIMS FOR RELIEF

### CAUSE OF ACTION – BREACH OF CONTRACT

37. Paragraphs 1-36 are incorporated by reference as if fully set forth herein.

38. The Initial Statement of Work states that Mya Number retains the intellectual property it developed for NumberSync. This is evidenced by, for example:



COMPLAINT FOR BREACH OF CONTRACT, INFRINGEMENT OF COPYRIGHTS, MISAPPROPRIATION OF TRADE SECRETS, AND INFRINGEMENT OF PATENT - 11

Agreement, Paragraph 5a: "… ███████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████

Agreement, Paragraph 5d: ████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████

39. Furthermore, AT&T agreed that it "████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████ Agreement, Paragraph 5d.

40. AT&T agreed to pay Mya Number a royalty in consideration for use of Mya Number's intellectual property.

41. AT&T has failed to pay any royalty pursuant to the Agreement.

42. AT&T has breached the terms of the Agreement.

43. As a result of AT&T's breach of the Agreement, Network Apps has suffered and will continue to suffer damage. Network Apps is entitled to recover from AT&T the damages suffered by Network Apps as a result of AT&T's breach.

COMPLAINT FOR BREACH OF CONTRACT, INFRINGEMENT OF COPYRIGHTS, MISAPPROPRIATION OF TRADE SECRETS, AND INFRINGEMENT OF PATENT - 12

CLOUTIER GLOBAL
1601 5ᵀᴴ AVE., STE 1100
SEATTLE, WA 98101
206.319.9001

## CAUSE OF ACTION- COPYRIGHT INFRINGMENT UNDER 17 U.S.C §501

44. Paragraphs 1-36 are incorporated by reference as if fully set forth herein.

45. Plaintiff owns a protectable copyright in all source and executable codes, and derivative works therein, developed by Mya Number for NumberSync.

46. AT&T copied protected copyright material in its deployment of NumberSync.

47. AT&T copied protected copyright material in its marketing of NumberSync.

48. AT&T's infringement is intentional.

49. As a result of AT&T's unlawful infringement of Network Apps' copyrights, Network Apps has suffered and will continue to suffer damage. Network Apps is entitled to recover from AT&T the damages suffered by Network Apps as a result of AT&T's unlawful acts.

## CAUSE OF ACTION- MISAPPROPRIATION OF TRADE SECRETS

50. Paragraphs 1-36 are incorporated by reference as if fully set forth herein.

51. Network Apps owns trade secrets in all source and executable codes, and derivative works therein, developed by Mya Number for NumberSync.

52. AT&T copied or has used Network Apps trade secrets in deployment of NumberSync.

53. AT&T has misappropriated Plaintiff's trade secrets.

54. AT&T's misappropriation is intentional.

55. As a result of AT&T's unlawful misappropriation of Network Apps' trade secrets, Network Apps has suffered and will continue to suffer damage. Network Apps is entitled to recover from AT&T the damages suffered by Network Apps as a result of AT&T's unlawful acts.

COMPLAINT FOR BREACH OF CONTRACT, INFRINGEMENT OF COPYRIGHTS, MISAPPROPRIATION OF TRADE SECRETS, AND INFRINGEMENT OF PATENT - 13

CLOUTIER GLOBAL
1601 5TH AVE., STE 1100
SEATTLE, WA 98101
206.319.9001

## CAUSE OF ACTION – PATENT INFRINGEMENT UNDER 35 U.S.C. § 271

56. Paragraphs 1-36 are hereby incorporated by reference as if fully set forth herein.

57. Upon information and belief, in violation of 35 U.S.C. § 271, AT&T is and has been directly infringing, contributing to the infringement of, and/or inducing others to infringe the '728 Patent by making, using, selling, and/or offering to sell in the United States, or importing into the United States products or processes that practice the inventions claimed in the '728 Patent, including without limitation the offering of NumberSync to all subscribers to the AT&T network.

58. The '728 Patent is presumed valid.

59. AT&T infringes, at least, each independent claim of the '728 Patent.

60. AT&T's infringement is intentional.

61. As a result of AT&T's unlawful infringement of the '728 Patent, Network Apps has suffered and will continue to suffer damage. Network Apps is entitled to recover from AT&T the damages suffered by Network Apps as a result of AT&T's unlawful acts.

62. On information and belief, AT&T intends to continue its unlawful infringing activity, and Network Apps will suffer irreparable harm for which there is no adequate remedy at law unless this court enjoins AT&T from further infringing activity.

CLOUTIER GLOBAL
1601 5TH AVE., STE 1100
SEATTLE, WA 98101
206.319.9001

## V. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

63. A judgment against Defendants for breach of contract;
64. A judgment that Defendants have unlawfully infringed Plaintiff's protected copyrighted material;
65. A judgement that Defendants have unlawfully misappropriated Plaintiff's protected trade secrets;
66. A judgment that AT&T has infringed the '728 Patent;
67. An award of all appropriate damages for breach of contract, infringement of copyrights, misappropriation of trade secrets, and infringement of the '728 Patent under 35 U.S.C. § 284, for Defendants' past unlawful acts up until the date such judgment is entered, including interest and costs;
68. An award to Plaintiff for on-going royalties for any continuing or future breach of contract and infringement or misappropriation of Plaintiff's intellectual property;
69. An award of treble damages against AT&T for willful infringement;
70. An award of Plaintiff's reasonable attorneys' fees, costs, and expenses that it incurs in prosecuting this action consistent with an exceptional case within the meaning of 35 U.S.C. § 285 or as allowed by law;
71. Alternatively, for an injunction against Defendants prohibiting Defendants from incorporating or offering to their subscribers NumberSync; and
72. Such other and further relief at law or in equity as the Court determines is just and proper.

COMPLAINT FOR BREACH OF CONTRACT, INFRINGEMENT OF COPYRIGHTS, MISAPPROPRIATION OF TRADE SECRETS, AND INFRINGEMENT OF PATENT - 15

CLOUTIER GLOBAL
1601 5TH AVE., STE 1100
SEATTLE, WA 98101
206.319.9001

**DEMAND FOR JURY TRIAL**

Network Apps hereby demand trial by jury on all claims and issues so triable.

DATED: 03 December 2016.                    Respectfully submitted,


                                            CLOUTIER GLOBAL

                                            By: /s/ Priya Sinha Cloutier
                                            Priya Sinha Cloutier, WSBA #37407
                                            Reuben Ortega, WSBA #42470

                                            Email: priya@cloutierglobal.com
                                            Email: reuben@cloutierglobal.com
                                            1601 5th Avenue, Suite 1100
                                            Seattle, WA 98101

COMPLAINT FOR BREACH OF CONTRACT, INFRINGEMENT OF COPYRIGHTS, MISAPPROPRIATION OF TRADE SECRETS, AND INFRINGEMENT OF PATENT - 16